IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| STANLEY WILLIAMS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 11-2035-STA |
|  | ) |  |
| GOODYEAR TIRE & RUBBER CO. | ) |  |
| and WINGFOOT COMMERCIAL | ) |  |
| TIRE SYSTEMS, INC., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

---

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendants Goodyear Tire & Rubber Co. and Wingfoot Commercial Tire Systems, Inc.'s Motion for Summary Judgment (D.E. # 35) filed on January 31, 2012. Plaintiff Stanley Williams has filed a response in opposition to Defendants' Motion, and Defendants have filed a reply brief. For the reasons set forth below, the Motion is **DENIED**.

**BACKGROUND**

The following facts are not in dispute for purposes of this Motion unless otherwise noted. On January 4, 2010, Plaintiff Stanley H. Williams was working as a U.S. Postal Service mail carrier. (Defs.' Statement of Undisputed Fact ¶ 1.) Plaintiff's route for three and one-half years prior to 2010 had required him to deliver and pickup mail at the Wingfoot Commercial Tire store ("the Wingfoot store"), located at 3085 Bellbrook Avenue, Memphis, Tennessee. (*Id.* ¶ 2.)[1] The main entrance to

---

[1] Defendants actually assert that Plaintiff had delivered the mail to the Wingfoot store for two or three years. The record shows that the Wingfoot store was on Plaintiff's route for three

1

the Wingfoot store has a steel stairway consisting of four steps and a covered landing area at the top of the steps directly in front of the door on the outside of the building. (*Id.* ¶ 3.) Plaintiff adds that the landing is not completely covered. (Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 3.) Wingfoot maintained a flat, rubber-backed mat on the landing in front of the door. (Defs.' Statement of Undisputed Fact ¶ 4.) According to Plaintiff, the mat was not always present on the landing. (Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 4.)

On January 4, 2010, between 9:00 a.m. and 11:00 a.m., after Plaintiff delivered the mail to Wingfoot and was exiting the building, Plaintiff's foot slipped out from under him as he began to descend the stairs, and he fell, hitting the stairs below and breaking his tailbone. (Defs.' Statement of Undisputed Fact ¶ 5.) Plaintiff emphasizes that the mat itself, and not his foot, slipped beneath him, causing his fall. (Pl.'s Resp. to Defs.' Statement of Undisputed Fact ¶ 5.) Plaintiff alleges that Defendants allowed ice to accumulate under the mat at the top of the landing and that the ice allowed the mat to move, causing Plaintiff's fall. (Defs.' Statement of Undisputed Fact ¶ 6.) Plaintiff did not see any ice on the stairs, in the landing area, or under the mat at any time. (*Id.* ¶ 7.)[2] Plaintiff does not recall whether it snowed or rained on or several days before January 4, 2010. (*Id.*) Plaintiff contests this statement and asserts that he was aware of possible precipitation on January 4, 2010.[3] Plaintiff did not lift up the mat to check for ice after he fell. (*Id.* ¶ 8.)

---

and one-half years. Williams Dep. 13:19–24, Dec. 7, 2011.

[2] Plaintiff argues that there is evidence he "saw ice in the landing area." However, the deposition testimony Plaintiff cites actually refers to ice possibly being "in the dark area up under the steps," and not the landing. Williams Dep. 35:20–36:20.

[3] Plaintiff disputes this assertion of fact and cites his deposition testimony where he stated, "I just didn't feel comfortable that early because there had been precipitation." Williams Dep. 15:11–12. The Court finds that this testimony does not actually dispute Defendants'

2

After he fell, Plaintiff immediately called his manager Christina Bledsoe ("Bledsoe") to report his fall and told her specifically to check for ice under the mat. (*Id.* ¶ 9.)[4] Plaintiff then spoke with Beverly Bolden ("Bolden"), the office manager for the Wingfoot store. (*Id.*) Plaintiff did not tell Bolden that he believed that there was ice under the mat. (*Id.* ¶ 10.) Bolden looked at the mat immediately after Plaintiff's fall and pulled up the edge of it to make sure it was not moving or shifting. (*Id.*)[5] Bolden did not see any ice under the portion of the mat she lifted up. (*Id.*) Bolden arrived at the Wingfoot store on January 4, 2010, at approximately 6:00 a.m. and was likely the first person there. (*Id.* ¶ 12.) Bolden testified that she did not specifically recall whether she saw any snow or ice that morning or heard any discussion of snow or ice that morning. (*Id.*)[6]

There is no proof in the record that any one has ever fallen on the landing prior to Plaintiff's fall or ever complained that the landing was unsafe. (*Id.* ¶ 13.) Within two hours of Plaintiff's fall,

---

assertion about snow or rain "several days before" because Plaintiff was simply testifying to conditions as they existed on January 4, 2010, and not days prior to that day.

[4] Plaintiff disputes that he placed this call "immediately" after the fall. Plaintiff asserts that he sat on the ground for a moment, gathered up mail he had dropped, and then stood leaning on a rail for a few minutes. The Court finds that this dispute is largely irrelevant to the legal issues presented in Defendants' Motion.

[5] Again Plaintiff disputes that Bolden lifted the mat "immediately." Rather, Plaintiff asserts that this occurred several minutes after his fall and only after he had gotten to his feet. The Court finds that this dispute is largely irrelevant to the legal issues presented in Defendants' Motion.

[6] Plaintiffs dispute Defendant's assertion. To the extent that the statement can be construed to suggest that Bolden did not see snow or ice, the Court finds Plaintiff's point well taken. Bolden actually testified that she did not specifically remember snow or ice occurring on the day in question. Bolden Dep. 42:16–43:10; 47:2–22, Nov. 9, 2011. Bolden added that she does not come to work on mornings when there is snow or ice on the roadways and that she was at work on January 4, 2010. *Id.*

one of his managers from the U.S. Postal Service came to the scene of the incident and took photographs of the area. (*Id.* ¶ 14.) The parties disagree about whether the photographs show the presence of ice in the area under the mat or on the stairs. (*Id.* ¶ 15.)

In their Motion for Summary Judgment, Defendants argue that Plaintiff cannot establish all of the elements of his premises liability claim. Specifically, Defendants contend that Plaintiff cannot prove the existence of a dangerous condition on the premises or that Defendants had notice or constructive notice of such a condition before Plaintiff's fall. First, Defendant states that there is no evidence of ice being under the mat on the landing or on the stairs on the morning of January 4, 2010. Both Plaintiff and Bolden testified that they did not observe any ice on the landing or the stairs. According to Defendants, all of the photographs taken as part of the Postal Service's investigation show that there was no snow or ice on the Wingfoot premises on January 4, 2010. Defendants additionally argue that the accident report itself is inadmissible hearsay and therefore cannot be used to create issues of fact on this point. With respect to evidence of weather data from the Memphis International Airport on the morning in question, Defendants assert that the data cannot create a fact question about the presence of ice under the mat at the Wingfoot store. For these reasons Plaintiff has failed to adduce evidence of a dangerous condition on the premises.

Second, Defendants argue that even if Plaintiff could prove the existence of a dangerous condition at the Wingfoot store, Plaintiff cannot show that Defendant knew or should have known about the ice under the mat. There is no evidence in this case of a pattern or conduct or a recurring incident or continuing condition that should have put Defendants on notice of a dangerous condition. Furthermore, Defendants contend that Plaintiff cannot prove that any ice had been present for such a length of time that Defendants should have become aware of it. Plaintiff cannot establish when

4

the ice accumulated or when Defendants should have seen it. Defendant reiterates that evidence of the weather generally is not sufficient to put an owner on notice of a dangerous condition. Nor is Plaintiff's testimony about what he observed, for example what appeared to be water dripping from roof gutters, on his mail route relevant to the conditions at the Wingfoot premises. Based on the record before the Court, Defendants argue that Plaintiff cannot prove that Defendants were on notice of any dangerous condition. Therefore, summary judgment is proper.

In his response in opposition, Plaintiff argues that questions of fact remain in this case which should preclude summary judgment. Plaintiff cites the weather data from the early morning hours of January 4, 2010, showing that trace amounts of snowfall were recorded between 1:53 a.m. and 5:53 a.m. Plaintiff himself has testified that he encountered "questionable surfaces" and observed ice melting into water on his mail route prior to arriving at the Wingfoot store. Plaintiff also witnessed "glistening" in the shaded areas behind the steps on the Wingfoot property. According to Plaintiff, the Postal Service's investigation concluded that ice was present under the mat and the photographs taken show "moisture" under the rubber mat and on the metal landing. Plaintiff has testified to his belief that ice was under the mat and this condition caused him to slip and fall. Plaintiff also believes that Defendants were aware of the ice on the landing and simply placed the mat on top of the ice. In support of this theory, Plaintiff testified that when Bowden came out to check on him, he heard Bowden say, "I don't know why they would do that. This wasn't a good idea."[7] Based on the record, Plaintiff argues that he has produced sufficient evidence to create issues of fact about these elements of his premises liability claim.

---

[7] Neither party has addressed the admissibility of this statement, and so the Court declines to address that issue here.

In their reply, Defendants reiterate their contention that Plaintiff cannot prove the existence of a dangerous condition on the premises or Defendants' actual or constructive notice of the condition. Defendants address separately Plaintiff's evidence on the weather data, his own testimony, the Postal Service photographs of the scene, and the Postal Service accident report and repeat several of the arguments they made in their opening brief. Concerning the accident report, Defendants argue that the narrative included in the report is simply Plaintiff's own version of events, and not independent findings reached by the Postal Service. As such, the report is hearsay within hearsay. With respect to the element of notice, Defendants maintain that Plaintiff has no evidentiary support for his theory someone acting on behalf of Defendants' simply covered an icy area with the rubber mat.

### **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving part "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[9] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[10] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material

---

[8] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[10] *Celotex*, 477 U.S. at 324.

facts."[11] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[12] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[13]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[14] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[15] Finally, the "judge may not make credibility determinations or weigh the evidence."[16]

## ANALYSIS

### I. Admissibility of the Narrative in the Accident Report

As an initial matter, the Court must consider whether Plaintiff has come forward with relevant, admissible evidence in support of his claim. Defendants argue that the accident report prepared by the Postal Service, including the report's narrative about the accident, is inadmissible

---

[11] *Matsushita*, 475 U.S. at 586.

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[13] *Id.* at 251-52.

[14] *Celotex*, 477 U.S. at 322.

[15] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[16] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

hearsay. Defendants contend that even if the report is a business record, Plaintiff has not satisfied the requirements of Rule 803(6) of the Federal Rules of Evidence to authenticate the report. Furthermore, Defendants argue that the information in the report is hearsay within hearsay. The report indicates that it was prepared by Eric Clark; however, Plaintiff testified that Bledsoe, and not Clark, investigated the fall. Plaintiff has also admitted that the narrative contained in the report is based on Plaintiff's account of the accident as he related it to Bledsoe. In response to Defendant's argument, Plaintiffs simply contends that the report is admissible under Federal Rule of Evidence 803(6) as a business record.

Federal Rule of Evidence 801(c) defines hearsay as "a statement that the declarant does not make while testifying at the current trial or hearing, and a party offers in evidence to prove the truth of the matter asserted in the statement."[17] As a general rule, hearsay is not admissible.[18] However, the records of a regularly conducted activity are not excluded by the rule against hearsay, regardless of whether a declarant is available as a witness.[19] Pursuant to Rule 803(6), a record of an act, event, condition, opinion, or diagnosis is admissible if it meets the requirements of the Federal Rules of Evidence.[20] In this case, Defendant correctly points out that Plaintiff has not authenticated the report

---

[17] Fed. R. Evid. 801(c).

[18] Fed. R. Evid. 802.

[19] Fed. R. Evid. 803(6).

[20] A business record is admissible if (A) the record was made at or near the time by –or from information transmitted by– someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business . . . ; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian . . .; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6).

by offering the testimony of a records custodian. The Court would add that there exists some question about the trustworthiness of the report due to the circumstances of its preparation. Upon inspection the report bears the name and signature of Eric Clark. However, Plaintiff testified that his then-supervisor Bledsoe actually went to the scene and took the photographs. More importantly, Plaintiff testified that he related his account of the accident to Bledsoe, and not Clark. For these reasons, it is not clear that Plaintiff could establish that the report is admissible under Rule 803(6).

Even assuming that Plaintiff could satisfy the elements of Rule 803(6) and show that the report is admissible as a business record, the Court holds that the narrative portion of the report would not be admissible pursuant to Rule 803(6). Plaintiff has cited the accident report and in particular the statements contained in the report's narrative of the accident as substantive evidence to prove the truth of the matters asserted there. For example, the narrative states, "Underneath the doormat was a piece ice that resulted in the carrier's fall." Based on this statement in the narrative, Plaintiff asserts in his response brief that "Mr. Clark determined that the cause of the Plaintiffs [sic] fall was the presence of ice underneath the door mat."[21] At the same time, Plaintiff admitted in his deposition that the narrative included in the report was based on his own version of how the accident occurred. Plaintiff testified, "The narrative was based on what I told [Bledsoe]."[22] In other words, the narrative is Plaintiff's own hearsay statement.

Rule 805 of the Federal Rules of Evidence states that "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statement conforms with an

---

[21] Pl.'s Resp. in Opp'n, ¶ 13 (D.E. # 41).

[22] Williams Dep. 40:14–15.

9

exception to the rule."[23] The Sixth Circuit has specifically applied Rule 805 to reports prepared in the normal course of business which also contain statements based on a witness interview or narrative.[24] Where such a narrative is to be introduced as substantive evidence for the truth of the matters asserted in the narrative, the narrative itself constitutes hearsay within hearsay and "therefore needs an exception to cover both layers [i.e. the report and the narrative] to be admissible."[25] In other words, it is not enough for the proponent of the statements in the narrative to satisfy the requirements of Rule 803(6) and show that the report is admissible as a business record; the proponent must also show that the narrative itself satisfies some other hearsay exception. Otherwise, the narrative contained in such a report is admissible only to show that the narrative itself was accurately recorded in the course of preparing the report and "says nothing about the reliability of [the narrative]'s underlying assertions."[26] Therefore, in order for the narrative itself to be admissible, the party offering the narrative as substantive evidence must establish that a hearsay exception applies.

In the case at bar, Plaintiff argues only that the narrative portion of the accident report is admissible under Rule 803(6). To the extent that Plaintiff can ultimately meet the requirements of Rule 803(6), the report would be admissible; however, the narrative portion of the report would be

---

[23] Fed. R. Evid. 805.

[24] *Essex Ins. Co. v. Fidelity & Guar. Ins. Underwriters, Inc.*, 282 F. App'x 406, 411–12 (6th Cir. 2008).

[25] *Id.* at 411 (citations omitted).

[26] *Id.* at 412 (citing *Palmer v. Hoffman,* 318 U.S. 109, 113 (1943) ("[T]he fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of the business within the meaning of the Act.")).

admissible only to show that the report accurately recorded Plaintiff's narrative. Plaintiff has failed to demonstrate how the substance of the narrative is admissible under some other hearsay exception. Therefore, the Court holds that the narrative contained in the Postal Service accident report is not admissible as substantive evidence for the truth of the matters asserted in the narrative.

## II. Premises Liability

Turning to the merits of Plaintiff's claim, under Tennessee law Plaintiff must prove the following elements in order to make out his prima facie case of negligence: (1) Defendants owed him a duty of care; (2) Defendants' conduct fell below the applicable standard of care; (3) Plaintiff suffered an injury; and (4) Defendants' conduct was the cause-in-fact of Plaintiff's injuries; and (5) Defendants' conduct was the proximate or legal cause of Plaintiff's injury.[27] In the premises liability context, a premises owner has the duty "to exercise reasonable care to its business invitees to make the premises safe."[28] Premises owners are not, however, "the insurers of their patrons' safety."[29]

Plaintiff specifically alleges that a dangerous condition arose on Defendants' business premises when ice accumulated on the landing outside the door to the Wingfoot store and Defendant covered the ice with a door mat. It is well-settled under Tennessee law that "property owners are not required to keep their premises free of natural accumulations of snow and ice at all times."[30] In other words, the presence of snow or ice on the premises is not a *per se* dangerous condition. However,

---

[27] *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998).

[28] *Kenning v. HCA Health Servs. of Tenn., Inc.*, 1999 WL 1206697, *4 (Tenn. Ct. App. 1999) (citing *Eaton v. McLain,* 891 S.W.2d 587, 593 (Tenn.1994)).

[29] *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004).

[30] *Clifford v. Crye-Leike Commercial, Inc.*, 213 S.W.3d 849, 853 (Tenn. Ct. App. 2006); *Bowman v. State*, 206 S.W.3d 467, 473 (Tenn. Ct. App. 2006) (collecting cases).

property owners must "take reasonable steps to remove snow and ice within a reasonable time after it has formed or accumulated."[31] To determine the reasonableness of a property owner's effort to remove ice, the following factors are relevant: (1) the length of time the accumulation has been present, (2) the amount of the accumulation, (3) whether the accumulation could be, as a practical matter, removed, (4) the cost of removal, and (5) the foreseeability of injury.[32]

### A. Dangerous Condition

Defendants seek summary judgment on Plaintiff's claim for negligence, first arguing that Plaintiff cannot show that ice was present on the landing. Plaintiff has alleged that the dangerous condition at issue arose not just by the presence of ice on the landing but when "agents and/or employees of the Defendants [] negligently placed [a mat] over the ice . . . ."[33] Viewing the evidence in the light most favorable to Plaintiff, the Court holds that reasonable minds could differ over whether ice had accumulated on the landing outside the Wingfoot store. It is undisputed that Plaintiff lacks any direct evidence showing that ice was present on the landing. Plaintiff admitted in his deposition that he did not inspect the portion of the landing covered by the door mat to see if there was ice underneath. Plaintiff further admitted that he did not observe ice anywhere else on the landing or on the steps leading up to the landing. Bolden, the only other witness who testified during discovery in this case, also stated that she did not observe any ice on the landing, including on the portion of the landing she saw when she briefly lifted the mat after Plaintiff's accident had occurred. Therefore, in order for Plaintiff to satisfy this element of his prima facie case, Plaintiff must adduce

---

[31] *Bowman*, 206 S.W.3d at 473.

[32] *Id.*

[33] Compl. ¶¶ 1, 2.

circumstantial evidence that an accumulation of ice was present on the landing.

The Court concludes that when viewed in the light most favorable to Plaintiff, there is sufficient circumstantial evidence consistent with the presence of ice on the landing to create a triable issue. First, there is evidence that on January 4, 2010, trace amounts of frozen precipitation were recorded in the area of Memphis International Airport and that the high temperature for the day never rose above freezing. Plaintiff testified that prior to arriving at the Wingfoot store, he observed some areas of frost or snow, particularly in shaded places, as well as water dripping from roofs along his mail route. Based on his observations, Plaintiff concluded that he should proceed with caution while performing his duties that day. Second, concerning the premises of the Wingfoot store itself, Plaintiff testified that he saw "glistening" under the stairs to the store entrance and believed that the glistening was indicative of moisture in that space. Plaintiff further testified that the door mat was not always present on the landing and that when he noticed it there on January 4, 2010, he assumed it was placed there because of the weather conditions. With respect to Plaintiff's slip and fall, Plaintiff explained that his fall happened when he felt the entire mat slide under his foot, and not just his foot stumbling or slipping on top of the mat. According to Plaintiff, Bolden said of the mat after his fall: "I don't know why they would do that. This wasn't a good idea." After reviewing photographs of the landing and stairs taken on the day of the accident, Plaintiff testified that one photograph, stamped USPS 0017, appeared to show wetness or moisture present underneath the mat.[34] Taking this evidence and all reasonable inferences from it in the light most favorable

---

[34] Defendants argue that the photographs do not create an issue of fact about the presence of ice and cite several cases from the Tennessee courts to support this proposition. However, the Court holds that the authority cited is factually distinguishable. In one case, the Tennessee Court of Appeals concluded that a photograph of what appeared to be a stain on the pavement outside a grocery store was insufficient to prove that a dangerous condition existed on the premises.

Plaintiff, Plaintiff has come forward with enough evidence from which a jury could infer that ice accumulated on the landing and that the mat covered the ice. Therefore, Defendants' Motion for Summary Judgment is **DENIED** as to this issue.

Because Defendants have only sought summary judgment on the narrower question of whether ice was present on the landing, the Court need not address the broader issue of whether Defendants undertook reasonable efforts to remove ice from the landing. Defendant has, however, sought summary judgment on the issue of notice. Thus, assuming for purposes of summary judgment that ice was on the landing, the Court now turns to consider whether Defendants had notice of the ice.

**B. Notice of the Dangerous Condition**

In addition to the premises owner's general duty of care, a plaintiff must make the showing that the premises owner had notice of a dangerous or defective condition on the premises.[35] The

---

*Gordon v. By-Lo Mkts., Inc.*, No. E2009-02436-COA-R3-CV, 2010 WL 3895541, at *4 (Tenn. Ct. App. Oct. 5, 2010). The Court of Appeals found that "there is no proof beyond speculation that these indiscernible stains somehow contributed to [the plaintiff's] accident." *Id.*; *see also Nee v. Big Creek Partners,* 106 S.W.3d 650, 653–54 (Tenn. Ct. App. 2002) (holding that slip-and-fall plaintiff "simply introduced the pictures as an accurate representation of the stairs as they existed on the day of the accident" and failed to "submit evidence that something was wrong with the stairs depicted in the photograph").

By contrast, Plaintiff in the case at bar has adduced other circumstantial evidence in addition to the photographs to show that there was ice present on the landing and that the mat covered the ice. It should be noted that Bolden has testified that the stains in the photos occurred after a spill on the landing and remain on the surface of the landing to this day. Bolden Dep. 55:18–56:9. Consequently, there is a factual dispute about what the photographs actually depict. In any event, when viewed in the light most favorable to Plaintiff as the non-moving party, the Court finds that there is evidence that the stains depicted in the photographs corroborate Plaintiff's theory that something on the stairs contributed to his accident.

[35] *Blair*, 130 S.W.3d at 764.

plaintiff can accomplish this by showing either that "(1) the condition was caused or created by the owner, operator, or his agent; or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator has actual or constructive notice that the condition existed prior to the accident."[36] Plaintiff has alleged that Defendants "caused a dangerous condition" by placing the mat over ice that had accumulated on the landing outside the door to the Wingfoot store.[37] In other words, Plaintiff's theory of liability is not that Defendants had actual or constructive notice of a dangerous condition created by someone else but rather that Defendants themselves created the condition when someone placed the mat over the accumulated ice. In their opening brief, however, Defendants do not address this theory and argue instead that Plaintiff cannot show that Defendants had notice of a dangerous condition on the premises of the Wingfoot store, either under a recurring incident/continuing condition theory or under a constructive notice theory. To the extent that Defendants fail to address Plaintiff's theory that Defendants had notice of the condition because they actually created it, Defendant's Motion must be denied.

In their reply brief, Defendants do address Plaintiff's "theory that some unidentified agent of Defendants saw that there was ice on the landing on the morning of January 4, 2010, and placed the mat over the ice."[38] Defendants argue that Plaintiff lacks any proof in support of this theory. The

---

[36] *Id.*

[37] Compl. ¶ 1. *See also* Pl.'s Resp. in Opp'n ¶ 15 ("The Defendants perceived the problem with the icy landing at the top of the stairs and attempted to improve the icy conditions by placing the rubber mat on top of the ice.") and ¶ 20 ("Because Defendant not only recognized that there was ice present on the metal landing at the top of the stairs, but also attempted to rectify the problem by placing the rubber mat on tope of the ice, there is more than enough evidence which could lead reasonable jurors to conclude that the Defendants had notice that there was a dangerous condition upon their premises.").

[38] Defs.' Reply 8.

15

Court disagrees and holds that reasonable minds could infer that Defendants knew about the ice under the mat because some agent of Defendants placed the mat over the ice. The Court has already concluded that Plaintiff has come forward with sufficient evidence to create a triable issue about whether ice had accumulated on the landing underneath the mat. Other evidence shows that Defendants through their agents and employees assumed responsibility for the conditions on the landing during snow and ice accumulations. Bolden testified in her deposition that during inclement weather, store management would direct an employee of the store to spread salt on the steps and the area around the entrance to the store and do "whatever we had to do" to "take care of it."[39] As already discussed, Plaintiff maintains that when Bolden lifted the mat, she remarked, "I don't know why they would do that. This wasn't a good idea." It could be surmised from this statement that Bolden was referring to the mat and the manner in which the mat was placed on the landing by one of Defendants' employees. Taken together with other evidence that ice was on the landing and Bolden's remark that she did not know "why they would do that," a jury could find that Defendants through their employees were responsible for creating the dangerous condition by placing the mat on the landing to cover ice. Therefore, Defendant's Motion for Summary Judgment is **DENIED** as to this issue.

## CONCLUSION

Having held that issues of fact remain about the presence of ice on Defendants' business premises and whether Defendants created a dangerous condition on the premises, Defendants are not entitled to judgment as a matter of law. Therefore, Defendants' Motion for Summary Judgment is **DENIED**.

---

[39] Bolden Dep. 30:12–32:6.

**IT IS SO ORDERED.**

                                                  **s/ S. Thomas Anderson**
                                                  S. THOMAS ANDERSON
                                                  UNITED STATES DISTRICT JUDGE

                                                  Date: April 11, 2012.